UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD STARSKI,

          Plaintiff,

    v.

BOARD FOR CORRECTION OF NAVAL RECORDS,

          Defendant.

Case No.  14-cv-00650-RS

**ORDER DENYING MOTION TO DISMISS FOR LACK OF JURISDICTION AND GRANTING MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

In July 2002, Petitioner Edward Starski enlisted in the United States Navy.  Less than a year after Starski's enlistment, the Department of the Navy discharged him for failure to disclose pre-enlistment that he had a significant history of mental illness.  Starski vehemently denies that his mental illness predated enrollment.  He has applied to the Board for Correction of Naval Records to correct his military records so that they reflect the reason for discharge that he believes is correct:  medical disability, non-existent prior to service.  After considering and reconsidering twice Starski's request, the Board rejected Starski's application.  Disappointed with the Board's conclusion, Starski filed a petition with this court to correct his military record.

The Board for Correction of Naval Records has filed a motion to dismiss for lack of subject-matter jurisdiction or in the alternative for summary judgment.  *See* Fed. R. Civ. P. 12(b)(1), 56(a).  In accordance with Civil Local Rule 7-1(b), the motions are capable of disposition without oral argument.  While subject-matter jurisdiction is not lacking because Starski is not seek money damages but non-monetary injunctive relief, Starski has not demonstrated that

United States District Court
Northern District of California

United States District Court
Northern District of California

the Board's decision to deny his application to correct his military records was arbitrary, capricious, or contrary to law.  Accordingly, the Board's motion to dismiss for lack of jurisdiction is denied, but the motion for summary judgment is granted.

## II.    FACTS AND PROCEDURAL HISTORY

In July 2002, eighteen-year-old Starski enlisted in the United States Navy and began his service on active duty in November of that year.  At the time of enlistment, Navy doctors took Starski's medical history and performed various medical examinations.  Starski did not note any past diagnosis for psychological disorders or treatment.  *See* A.R. at 24-25.  The treating doctor evaluated Starski and concluded that he did not present any physical or mental abnormalities. A.R. at 27.  Prior to assuming active status in November 2002, Navy medical professionals again examined Starski and reviewed his medical history.  Once again, the examining officers did not learn of or identify mental illness.  *See* A.R. at 405.  Starski enrolled in and completed the Navy's eight-week recruit training.  Soon thereafter, he began "A School" at the Naval Nuclear Power Training Command and, in December 2002, underwent another medical examination.  *See id.* at 90-91.  The reviewing physician's assistant determined that Starski's physical and psychological conditions were normal and that Starski was qualified for duty.  *Id.*  Finally, in January 2003, Dr. Matthew Sommers conducted a Mental Status Exam for Starski and concluded that the results were within normal limits and recommended that he be returned to duty.  A.R. at 10, 400.[1]

While enrolled in the Naval Nuclear Power Training Command, Starski experienced a series of family tragedies, prompting an official to order that Starski seek medical and psychological evaluation.  A.R. at 78.  Marliee Griswold, a Navy staff psychiatrist, evaluated Starski and noted that he "ha[d] been diagnosed with Bipolar disorder at the age of six," had survived "several suicide attempts," and had used mood-stabilizing and antipsychotic medications. *Id.*  As a result of these findings, Dr. Griswold concluded that Starski was not qualified for nuclear

---

[1] In the petition for judicial review, Starski states that this mental-health evaluation occurred on June 30, 2003—more than one month after his discharge.  Pet. ¶ 7.  The Board explains that a copying error likely contributed to the confusion and that Dr. Sommers examined Starski on January 30, 2003.

United States District Court
Northern District of California

or submarine duties and that the Navy should initiate administrative separation because Starski's mental disorders existed prior to enlistment. *Id.* Dr. Moore, a second staff psychiatrist, concurred with Dr. Griswold's conclusions and recommended administrative separation and a medical hold. A.R. at 78-79. On May 21, 2003, the Personnel Support Activity Detachment finalized the administrative separation and discharged Starski, citing "erroneous enlistment" as the narrative reason for separation. *Id.* at 23.

Starski denies that he had a significant mental-health history before enlisting in the Navy. On July 21, 2010, Starski applied to correct his record with the Board of Correction of Naval Records, denying that he suffered from pre-existing mental illness. Rather, he contends that the rigors of training and extraordinary personal tragedy occurring while in the service caused his mental illness. A.R. at 15-16. After reviewing Starski's application, the Board denied his request. A.R. at 11. Starski renewed his request, this time with supporting declarations from his family members. *See* A.R. at 5-9. Once again, the Board denied Starski's request on the basis that the new evidence was not material and would not have impacted the Board's initial determination. A.R. at 1. Starski now petitions this court to correct his military record. While this case was pending, the Board chose to review Starski's application anew after discovering a procedural error, but ultimately reached the same result: denial of his application for reconsideration.

The Board has filed a motion to dismiss, arguing that as correction of Starski's military record is tantamount to an award of money damages, the absence of a waiver by the United States of sovereign immunity for over $10,000 in money damages results in a lack of subject-matter jurisdiction. In the alternative, the Board claims a right to judgment as a matter of law because Starski has not demonstrated that the Board's decision to deny his application for correction of military records was arbitrary and capricious.

### III.    LEGAL STANDARD

The Board filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and contends that Starski's petition should be dismissed for lack of subject-matter jurisdiction. Starski, the party seeking to invoke the court's subject-matter jurisdiction, bears the burden of establishing that subject-matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co.*

*of Am.*, 511 U.S. 375, 377 (1994).  The complaint or extrinsic evidence informs whether a plaintiff or petitioner has invoked the jurisdiction of the federal courts.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Non-conclusory averments and those "which are [not] contradicted by documents referred to in the complaint" must be assumed to be true.  *Id.* (internal quotation marks omitted).

When reviewing a final agency action under the Administrative Procedures Act, 5 U.S.C. § 706, the usual summary-judgment standard does not apply.  *Hosp. of Univ. of Penn. v. Sebelius*, 634 F. Supp. 2d 9, 12 (D.D.C. 2009).  Instead, the administrative agency serves as factfinder, and therefore "the function of the district court is to determine whether . . . as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985).  Under the APA, a district court may overturn an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if the decision is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *Chappell v. Wallace*, 462 U.S. 196, 303 (1983) (holding that decisions of the Board for Correction of Military Records are subject to judicial review and may "be set aside if they are arbitrary, capricious, or not based on substantial evidence.")  "If the evidence contained in the administrative record is susceptible to more than one rational interpretation, a reviewing court may not substitute its judgment for that of the agency."  *Hensala v. Dep't of Air Force*, 343 F.3d 951, 955-56 (9th Cir. 2003).

## IV.    DISCUSSION

### A.  Subject-Matter Jurisdiction

Federal courts do not have jurisdiction over suits against federal agencies unless Congress has expressly waived sovereign immunity.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).  The Navy Board for Correction of Military Records is a federal agency, and therefore a suit against the Board cannot proceed in federal court absent a waiver of sovereign immunity.  *See Guerrero v. Stone*, 970 F.2d 626, 628 (9th Cir. 1992) (holding that the Army Board for Correction of Military Records is an agency).  The APA, 5 U.S.C. § 702 provides judicial review to "[a]

person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  Federal courts "shall not" dismiss or deny relief for "[a]n action . . . seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under the color of legal authority" on the ground that the claim "is against the United States or that the United States is an indispensable party."  *Id.*  Thus, the APA waives sovereign immunity for claims pursuant to 28 U.S.C. § 1331 only if (1) the petitioner's "claims are not for money damages," (2) the petitioner does not have an adequate remedy available elsewhere, and (3) the petitioner does "not seek relief expressly or impliedly forbidden by another statute." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998).

The Board argues that Starski's claim for relief does not satisfy the APA's three requirements for federal subject-matter jurisdiction.  If a plaintiff seeks more than $10,000 in money damages, Tucker Act provides a waiver of sovereign immunity, but grants exclusive jurisdiction to hear claims for monetary relief to the Court of Federal Claims.  *Suburban Mortgage Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1121 (Fed. Cir. 2007).  The Board argues that Starski's claim falls outside of the limits of the APA's waiver of sovereign immunity because in actuality he is seeking money damages over which the Court of Federal Claims has exclusive jurisdiction.  The Board's motion to dismiss rests entirely on a conclusion that Starski seeks "money damages" within the meaning of the APA and the Tucker Act.

A claim for "money damages" is "intended to provide a victim with money compensation for an injury to his person, property, or reputation."  *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988).  "The fact that a judicial remedy may require one party to pay money damages to another is not a sufficient reason to characterize the relief as 'money damages.'"  *Id.*  "[T]he correct inquiry" to determine whether a claim is for "money damages" is "whether the plaintiff seeks compensatory relief or instead seeks specific relief; the former constitutes 'money damages' but the latter does not."  *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 929 (9th Cir. 2008).

Starski seeks only a declaratory judgment to change the narrative reason for his discharge from "erroneous enlistment" to "medical disability, non-existent prior to service."  R. 1 at 3, Pet. ¶

United States District Court
Northern District of California

a.  His ultimate goal is to change his disability retirement status—a change of significant pecuniary value.  Board Br. at 9.

The Board ignores a decision by the D.C. Circuit expressly rejecting this very argument and holding that "a claim is not for money [damages] merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff."  *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 534 (D.C. Cir. 1988).  In so doing, the court expressly rejected the Naval Discharge Review Board's contention that an order changing the plaintiffs' discharge classification from less than honorable discharge amounted to a request for monetary damages.  *See id.*  Although the injunctive relief that the plaintiffs sought would eventually result in pecuniary benefit, the court held that the plaintiffs were not seeking "money damages."  *Vietnam Veterans* is indistinguishable from the facts here and presents persuasive authority on this issue.  Because Starski is not seeking compensation for past injury; his claim is for equitable relief, and therefore does not fall outside the bounds of the APA's sovereign-immunity waiver simply because the relief he seeks may result in future pecuniary benefit.  Nor does his petition fall within the exclusive jurisdiction of the Court of Federal Claims.  Accordingly, the Board's motion to dismiss Starski's petition for lack of subject-matter jurisdiction is denied.

### B.  Motion for Summary Judgment

Starski carries a heavy burden in attempting to show that the Board's decision to deny his application for reconsideration was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or that the decision is "unsupported by substantial evidence."  5 U.S.C. § 706(2)(A), (E).  Review of decisions by military correction boards operates under a particularly deferential standard because 10 U.S.C. § 1552(a)(1) gives such boards broad discretion to correct military records "when the Secretary considers it necessary to correct an error or remove an injustice."  *See also Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989).  "It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* to correct an error or remove an injustice,' 10 U.S.C. § 1552(a) (emphasis added), than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.,* that there has been an error or injustice."  *Id.*  "All that is

United States District Court
Northern District of California

United States District Court
Northern District of California

1    required is that the Board's decision minimally contain a rational connection between the facts

2    found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997).

3           Starski offers three reasons to support his claim that the Navy's decision to discharge him

4    for failing to disclose a history of mental illness prior to enlistment is arbitrary, capricious, and

5    unsupported by substantial evidence.  First, he argues that Dr. Griswold did not have personal

6    knowledge of his history of mental health.  Pet'r Resp. at 7.  Second, he contends that the Board

7    ignored the conclusions of four Navy medical personnel who examined Starski between

8    enlistment and discharge and determined that his mental and physical health was normal.  *Id.* at

9    7-8.  Third, Starski relies on the declarations from his mother, brother, and step-father as evidence

10   that Dr. Griswold notes about pre-enlistment mental-health diagnoses must be incorrect.  *Id.*

11          The trouble with Starski's arguments is that they rest on the proposition that Dr. Griswold

12   lied or was mistaken about the substance of her conversation with Starski about his medical

13   history.  When reviewing applications for correction of military records, the Board may "rel[y] on

14   a presumption of regularity to support the official actions of public officers."  32 C.F.R. §

15   723.3(e)(2).  Starski must offer "substantial evidence" that Dr. Griswold did not properly

16   discharge her duties in order to overcome this presumption.  *Id.*  He has not done so.  The records

17   of the other Navy doctors who examined Starski are evidence only of what information he

18   provided to the examining doctor.  Only Starski and the doctors know the substance of their

19   conversations during the mental and physical evaluations, and the Board's decision to credit the

20   records of a Navy staff psychiatrist was not improper.

21          The evidence Starski has offered in an attempt to overcome the presumption of regularity

22   is simply not substantial.  Gloria Cornett, Starski's step-mother, attested that Starski "was always a

23   very smart and healthy young man" and that "[h]e was not diagnosed with any illness as a child."

24   A.R. at 7.  Cornett did not provide information about whether she accompanied Starski to all

25   medical appointments.  In addition, she does not explain how she defines "child"—under the age

26   of 18, 12, or 6.  Moreover, according to Starski's medical records, his parents were killed in a car

27   accident when Starski was twelve or thirteen, and he lived in an orphanage until he was seventeen

28   years old.  Accordingly, the Board may have made the reasonable assumption that Cornett was not

1    aware of Starski's entire medical history.  *See* A.R. at 80, 83.

2           The declarations of Raymond Starski and Larry Cornett are similarly lacking foundation

3    and persuasive heft to overcome the presumption of regularity.  Starski's brother Raymond

4    declares that Starski "was never diagnosed with any disorders or anything," but does not offer

5    information about whether he accompanied Starski to every childhood medical appointment or had

6    personal knowledge of Starski's medical history.  *See* A.R. at 8.  Starski's step-father, Larry

7    Cornett attests only that he is "unaware of any medical diagnosis for mental illness."  Moreover,

8    his personal knowledge of Starski's medical history is limited; Cornett has known Starski since

9    the age of fifteen, and offers no personal knowledge of his step-son's earlier history.  Because

10   neither Larry Cornett's nor Raymond Starski's declarations offer significant probative evidence of

11   Starski's mental-health history prior to enlistment, the Board's decision to rely on Dr. Griswold's

12   medical records to deny Starski's application to correct his medical records was not arbitrary,

13   capricious, or unsupported.

14          Starski's final argument is that the Board's conclusion is arbitrary and capricious because

15   it conflicts with the Department of Veteran Affairs' ("VA") decision to rate Starski as 100%

16   permanently disabled as a result of his service.  In particular, the VA noted that Starski's

17   "[s]ervice medical records indicate [that he] had no history of any mental illness or treatment

18   preceding service but preservice treatment was referenced in [his] Medical Evaluation Board

19   proceedings."  A.R. at 395.

20          The VA's conclusion regarding Starski's disability status is not, however, sufficient to

21   establish that the Board's rejection of Starski's application was arbitrary, capricious, or

22   unsupported by substantial evidence.  The VA and the service branches rely on disability ratings

23   for different purposes, the VA's disability rating is not binding on the Board.  *See Lockwood v.*

24   *United States*, 90 Fed. Cl. 210, 219 (2008).  Service branches use disability ratings to determine

25   whether a person is fit to perform the functions of an active officer, whereas the VA uses disability

26   ratings when considering whether a veteran is fit to perform civilian work.  *Id.*  The VA chose to

27   give less weight to Dr. Griswold's reference to pre-service mental-health treatment than did the

28   Navy.  That decision was the Navy's prerogative.  Any conflict between the conclusions reached

United States District Court
Northern District of California

by the VA and the Board about Starski's medical history does not support Starski's assertion that the Board's decision to deny his application to correct military records was arbitrary, capricious, or unsupported by substantial evidence.

## V.   CONCLUSION

Contrary to the Board's assertion, this court has subject-matter jurisdiction to adjudicate Starski's petition for judicial review of the Board's decision to deny his request to correct military records.  Jurisdiction notwithstanding, Starski has not demonstrated that the Board's decision was arbitrary, capricious, or unsupported by substantial evidence, and therefore the Board is entitled to judgement as a matter of law.  The Board's motion to dismiss is therefore denied, and its motion for summary judgment is granted.

**IT IS SO ORDERED**.

Dated:  September 29, 2015

RICHARD SEEBORG
United States District Judge